**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Miriam Finch, <u>et al.</u>,        )
                                     )
       Plaintiffs,        )        Case No. 1:07-CV-987
                                     )
    v.                       )
                                     )
Xavier University, <u>et al.</u>,   )
                                     )
       Defendants.        )

<u>O R D E R</u>

This matter is before the Court on cross-motions for summary judgment filed by Plaintiffs Miriam Finch and Tara Michels (Doc. No. 54) and Defendant Xavier University (Doc. No. 105). Also before the Court is a motion by Plaintiffs to supplement their memorandum in opposition to Defendant's motion for summary judgment (Doc. No. 140). Additionally, Defendant has pending before the Court a motion to strike exhibits filed with Plaintiffs' motion for summary judgment (Doc. No. 64), a motion to file a corrected table of contents for its motion for summary judgment (Doc. No. 119), and a motion to disregard Plaintiff's notice of additional authority (Doc. No. 151). For the reasons set forth below, the parties' cross-motions for summary judgment are not well-taken and are **DENIED**; Plaintiffs' motion to file a supplemental brief is well-taken and is **GRANTED**; Defendant's motion to strike is **MOOT**; Defendant's motion to file a corrected table of contents is well-taken and is **GRANTED**; Defendant's

motion to disregard Plaintiffs' notice of additional authority is **MOOT**.

## I. Background

Plaintiffs Miriam Finch and Tara Michels present claims for age and gender discrimination, retaliation, breach of contract, and violations of the Equal Pay Act, 29 U.S.C. § 201, et seq., arising out of the termination of their employment as tenured professors in the Communications Arts Department of Defendant Xavier University. Plaintiffs' age discrimination claims arise under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and their gender discrimination claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq. Plaintiffs' retaliation claims arise only under Title IX. Amended Complaint (Doc. No. 33) ¶¶ 41-45. The parties have presented the Court with an extraordinarily voluminous and detailed summary judgment record. Having reviewed that record, however, the Court is persuaded that a summary of events is sufficient for purposes of resolving the pending motions.

As stated, Plaintiffs were tenured professors in the Communications Arts Department at Xavier University ("Xavier"). Xavier hired Finch in 1988 as an assistant professor and she was granted tenure in 1994. Amended Complaint ¶ 8. Finch was chair

2

of the Department from 1995 to 2004.  Id.  Xavier hired Michels

as an assistant professor in 1999 and she was granted tenure in

2002.  Id. ¶ 7.

This case arises from or at least coincides with the

appointment of Professor Indira DeSilva to the position of chair

of the Communications Arts Department in 2003.  The record fairly

reflects that the Communications Arts Department was

factionalized and beset by in-fighting among its faculty.  The

lack of collegiality among the staff is a central issue in this

case because Xavier claims that Plaintiffs were jointly

responsible for the dysfunctional atmosphere in the department

and that is the reason they were eventually dismissed.

Plaintiffs deny that they were the source of dysfunction but

nevertheless contend that the Communications Arts Department was

no different from other departments, such as the Marketing

Department, which supposedly had a reputation for demonstrative

disagreements among its faculty.

Plaintiffs' consolidated memorandum in opposition to

Defendant's motion for summary judgment sets forth in exacting

detail the myriad of incidents and disputes between themselves

and DeSilva from 2004 to 2007.  In general, these disputes

involved departmental policy, teaching assignments, a new faculty

search, and their performance reviews.  Plaintiffs believed,

however, that their poor relationship with DeSilva was not a mere

conflict of personalties, but rather resulted because DeSilva held discriminatory attitudes about women.

Plaintiffs filed formal discrimination complaints about DeSilva with the University in February 2007. The continuing conflict within the Communications Arts Department and counter-charges of discrimination between Plaintiffs and DeSilva led Provost Roger Fortin to form an ad hoc committee, comprised of several Xavier faculty members and a professor from the staff of Northern Kentucky University, to investigate the inner workings of the entire Department. Plaintiffs, however, contend that the ad hoc committee was not formed to investigate the department or their discrimination complaints. Rather, Plaintiffs alleged that the ad hoc committee was formed to investigate them in retaliation for their complaints about DeSilva. The ad hoc committee not only determined that DeSilva did not discriminate against Plaintiffs, it recommended that the University should institute formal termination proceedings against them for gross dereliction in carrying out their ethical responsibilities to the University.

The University then appointed a five-member Faculty Hearing Committee which held evidentiary hearings on the charges preferred against Plaintiffs. The hearings took place on January 2 and 3, 2008 for Finch and on January 20 and 21, 2008 for Michels. The Committee decided that no party would be entitled to assistance of legal counsel, although each Plaintiff was

permitted to have the assistance of another faculty member and offer evidence in defense. Finch, however, proceeded without assistance at hearing while Michels was assisted her husband, Randy Patnode, who was also a member of the Communications Arts faculty. At the conclusion of the hearing, the committee unanimously recommended that Plaintiffs be terminated. The president of the University, Father Michael Graham, reviewed the Committee's recommendations and the transcripts of the hearings and adopted the recommendation that they be terminated. Plaintiffs were subsequently given one year terminal contracts and notified that they would be dismissed at the conclusion of the 2008-2009 academic year.

Plaintiffs filed this lawsuit on December 3, 2007 by filing a complaint which asserted their claims for breach of contract, retaliation, and violations of Title IX and the Equal Pay Act. Plaintiffs had previously filed timely claims of age and gender discrimination with the EEOC. Plaintiffs received right-to-sue letters from the EEOC on May 7, 2008 and filed a timely amended complaint asserting claims for gender discrimination under Title VII and age discrimination under the ADEA.

Plaintiffs filed a motion for summary judgment on their retaliation claims and Defendant filed a consolidated memorandum in opposition to Plaintiffs' motion and their own motion for summary judgment on all of Plaintiffs' claims. On November 30,

2009, the Court held a status conference with the parties at which time it advised them that both motions for summary judgment would be denied.  This order sets forth the basis for that decision.

## II. <u>Summary Judgment Standard of Review</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the

standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. Id.; Anderson, 477 U.S. at 250. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. Id. Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based

8

solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

## III. Analysis

The parties have supported their respective motions with the filing of numerous exhibits, depositions, and affidavits. The Court specifically notes that Defendant has supported its motion for summary judgment with eight affidavits submitted by members of Xavier's faculty and/or administrative staff. Doc. No. 117, Exs. 3, 8, 10-15; see also Doc. Nos. 106-112. Each of these affidavits states only that the affiant "declare[s] the following to be true and correct." As Plaintiffs correctly observe in their papers, none of these affidavits have been notarized and none of the affidavits have been sworn to under penalty of perjury, as is permitted by 28 U.S.C. § 1746. The Court, therefore, may not consider these affidavits in ruling on the motions for summary judgment. Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-69 (6th Cir. 1991) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment."); Zainalian v. Memphis Bd. of Educ., 3 Fed. Appx. 429, 431 (6th Cir. 2001)("As Zainalian neither verified his affidavit nor complaint, signed them under oath, nor signed them under penalty of perjury pursuant to 28 U.S.C. § 1746, the facts averred to therein lacked the force and effect of an affidavit for purposes of responding to a motion for summary judgment.").

A. <u>Employment Discrimination</u>

As stated, Plaintiffs assert claims of gender discrimination pursuant to Title VII and Title IX, age discrimination claims pursuant to the ADEA, and claims for retaliation pursuant to Title IX. Plaintiffs' Title VII and Title IX claims are essentially coextensive and subject to the same evidentiary standards. <u>Buntin v. Breathitt County Bd. of Educ.</u>, 134 F.3d 796, 800 (6th Cir. 1998).

This is a circumstantial evidence case and so the familiar <u>McDonnell Douglas</u> burden shifting evidentiary framework applies. Under this method, a plaintiff establishes a prima facie case of discrimination by showing: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job lost or not gained; and 4) she was replaced by an individual outside of the protected class or treated less favorably than a similarly-situated employee outside of the protected class. <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995).

A plaintiff establishes a prima facie case of age discrimination by showing: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the job lost or not gained; and 4) that a person substantially younger than the plaintiff replaced or was selected over her, or that the position remained open while the employer

sought other applicants.  O'Connor v. Consolidated Coin Caterers
Corp., 517 U.S. 308, 313 (1996); Monette v. Electronic Data Sys.
Corp., 90 F.3d 1173, 1186 n.12 (6th Cir. 1996); Cooley v. Carmike
Cinemas, Inc., 25 F.3d 1325, 1329 (6th Cir. 1994).  A plaintiff
may also satisfy the fourth element by showing that the defendant
treated similarly-situated non-protected persons more favorably
than the plaintiff.  Talley v. Bravo Pitino Restaurant, Ltd., 61
F.3d 1241, 1246 (6th Cir. 1995).

     Once the plaintiff establishes a prima facie case of
either gender or age discrimination, the burden of production
shifts to the employer to proffer a legitimate, non-
discriminatory reason for its decision.  Manzer v. Diamond
Shamrock Chem. Co., 29 F.3d 1078, 1082 (6th Cir. 1994).

     If the employer meets its burden of production, the
burden shifts back to the plaintiff to show that the reasons
proffered by the defendant are pretextual.  Id.  However, the
burden of persuasion remains with the plaintiff at all times.
St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

     The plaintiff may prove pretext in three ways:  1) by
showing that the defendant's reasons had no basis in fact; 2) by
showing that the reasons did not actually motivate the defendant;
or, 3) by showing that the proffered reasons were not sufficient
to warrant the action taken.  Kline v. Tennessee Valley Auth.,
128 F.3d 337, 346 (6th Cir. 1997).  When the plaintiff proves

pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. Id. In the second situation, the factual basis for the discharge is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

The Court finds that Plaintiffs easily establish a prima facie case of both gender and age discrimination. They are both women and both over the age of 40. Additionally, they were qualified for their positions and had an adverse employment action - their terminations - taken against them. Finally, with respect to their gender discrimination claims, Plaintiffs have both adduced evidence that a similarly-situated male was treated more favorably than them, in this case Professor Randy Patnode. With respect to their age discrimination claims, Plaintiff have adduced evidence that Xavier hired two persons under the age of 40 to replace them. Walker Dep. (Doc. No. 127), at 267-70.

In its reply brief, Defendant argues that Patnode was not similarly-situated to Plaintiffs, even though it apparently concedes that his conduct was similar to Plaintiffs, because he was able to overcome his differences with other faculty members and help the department move forward in a productive manner. Plaintiffs, however, have adduced at least two pieces of evidence that indicate that, at the relevant times, Xavier considered

Plaintiffs and Patnode equally culpable for the problems in the
Communications Arts Department. First, in response to an earlier
grievance Patnode filed against other faculty members, the
Faculty Hearing Committee not only denied his grievance, but also
concluded that Patnode was "disrespectful, condescending, and
unprofessional" and that his "non-collegial and unprofessional
behavior was longstanding and corrosive to the department." Doc.
No. 128-2, at 13. Second, in its report, the ad hoc committee
specifically found that Finch, Michels, and Patnode had combined
to create a hostile and non-collegial work environment and that
it "neither saw evidence nor heard hope expressed by any of the
three that a change in their pattern of behavior might occur
short of removing the Chair." Doc. No. 81-1, at 8. Thus,
Defendant's argument that Patnode demonstrated a willingness to
overcome his differences with other department members is
specifically refuted by the record. Indeed, the University found
on at least two occasions that Patnode's behavior was
longstanding and unlikely to change, and yet proceedings were
never instituted to terminate his employment. Therefore, he was
treated more favorably than Plaintiffs. The Court recognizes
that while the ad hoc committee determined that Patnode's conduct
was not quite as serious as Plaintiffs' behavior, Doc. No. 81-1,

at 9,[1] it is apparent that Finch's, Michels', and Patnode's conduct differed in degree and not kind.  The Court, therefore, concludes that Plaintiffs have established prima facie cases of both gender and age discrimination.

Plaintiffs' alleged obstreperous conduct provides a legitimate, non-discriminatory reason for their discharge.  The burden, therefore, shifts to Plaintiffs to adduce evidence of pretext.

There is sufficient evidence of pretext to submit to the jury.  As Plaintiffs argue in their papers, the fact that Patnode was not referred for dismissal despite engaging in substantially similar conduct suggests that Plaintiffs' behavior was insufficient to warrant termination.  This difference in treatment alone is sufficient to submit Plaintiffs' gender discrimination claims to a jury.  Plaintiffs' evidence of pretext on their age discrimination claims is not strong.  For instance, Plaintiffs' brief suggests that they were discriminated against on the basis of seniority, not age, which is not illegal.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993).  However, there is at least some evidence which would support a finding that Plaintiffs' conduct was not the true reason for their termination.  For instance, the fact that none of the members of

---

[1]    The committee found that Patnode's behavior was "just short" of serious cause.

14

the Faculty Hearing Committee could pinpoint a specific incident in which Plaintiffs were guilty of gross dereliction of duty[2] suggests that the committee's assessment of their conduct was highly subjective.  See Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 93 (6th Cir. 1982) (stating that while subjective procedures are not per se violative, they provide a "ready mechanism for discrimination" and should be "carefully scrutinized in order to prevent abuse.").[3]

Accordingly, for the reasons just stated, Defendant's motion for summary judgment on Plaintiffs' gender and age discrimination claims is not well-taken and is **DENIED.**

## B. Retaliation

Plaintiffs claim that Defendant retaliated against them for filing discrimination complaints against Professor DeSilva by investigating them and instituting proceedings which led to their ultimate dismissal.  As indicated, Plaintiffs apparently assert their retaliation claims pursuant to Title IX. Like Title VII, Title IX provides protection against retaliation to persons who

---

[2]    See Doc. No. 134, at 96-99 (citing depositions of Faculty Hearing Committee members).

[3]    The Court recognizes that the Faculty Hearing Committee was not the final decision-maker regarding Plaintiffs' terminations.  Nevertheless, where, as in this case, the final decision-maker reviewed and approved a recommendation for termination, the discriminatory animus of the recommender can be imputed to the decision-maker.  DiCarlo v. Potter, 358 F.3d 408, 413 (6th Cir. 2004)

have complained about gender discrimination.  <u>Jackson v.</u>
<u>Birmingham Bd. of Educ.</u>, 544 U.S. 167, 173-74 (2005).  Title VII
case law also applies to Title IX retaliation claims.  <u>Nelson v.</u>
<u>Christian Bros. Univ.</u>, 226 Fed. Appx. 448, 454 (6th Cir. 2007).
The parties present cross-motions for summary judgment on this
issue.

Plaintiffs present both a direct case and a
circumstantial case of retaliatory discharge.  A modified version
of the <u>McDonnell Douglas</u> analysis applies to circumstantial
retaliation claims.  Although Defendant contends that Plaintiffs
cannot establish either a direct or a circumstantial case of
retaliation, a reasonable juror can find that Plaintiffs can
establish a circumstantial case of retaliation.  The Court,
therefore, need not address whether direct evidence supports
Plaintiffs' retaliation claims.

In order to establish a prima facie case of
retaliation, a plaintiff must establish that: 1) she engaged in
activity protected by the discrimination statutes; 2) the
exercise of her civil rights was known to the defendant; 3)
thereafter, the defendant took an employment action adverse to
the plaintiff; and 4) there was a causal connection between the
protected activity and the adverse employment action.  <u>See</u>
<u>Harrison v. Metropolitan Gov't of Nashville</u>, 80 F.3d 1107, 1118
(6th Cir. 1996), <u>overruled on other grounds as recognized by</u>

16

<u>Jackson v. Quanex Corp</u>., 191 F.3d 647, 667 (6th Cir. 1999).  To establish the causal connection required in the fourth prong, the plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not participated in protected activity.  <u>See</u> <u>EEOC v. Avery Dennison Corp.</u>, 104 F.3d 858, 861 (6th Cir. 1997); <u>Jackson v. RKO Bottlers of Toledo, Inc.</u>, 743 F.2d 370, 377 (6th Cir. 1984).  The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met.  <u>See</u> <u>Avery Dennison</u>, 104 F.3d at 861.

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action.  <u>Manzer v. Diamond Shamrock Chemicals Co.</u>, 29 F.3d 1078, 1082 (6th Cir. 1994).  If the defendant meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are but a pretext for retaliation.  <u>Id.</u>  However, the burden of persuasion remains with the plaintiff at all times.  <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 511 (1993).

Defendant argues that Plaintiffs cannot establish a prima facie case of retaliation because they did not protest perceived discrimination in a reasonable manner, they lodged their complaints in bad faith, and because the temporal proximity

severs any connection between their complaints and terminations.

Defendant's first two arguments are related and it appears that Defendant is essentially complaining about the tone of Plaintiffs' protests, rather than the content of their protests. <u>See</u> Doc. No. 117, at 76-77 (characterizing Plaintiffs' conduct as arrogant and uncivil). A plaintiff must demonstrate that her opposition to an alleged unlawful employment practice was reasonable and based on a good-faith belief that the employer was acting in violation of the employment discrimination statutes. <u>See</u> <u>Johnson v. University of Cincinnati</u>, 215 F.3d 561, 579 (6th Cir. 2000). An employee has engaged in protected activity when she complains about unlawful practices to a manager, the union, or other employees. <u>Id.</u> at 579-80. In <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304 (6th Cir. 1989), the Court stated that:

> The "exceptionally broad protections" of the participation clause extends to persons who have "participated in any manner" in Title VII proceedings. <u>Pettway v. American Cast Iron Pipe Co.</u>, 411 F.2d 998, 1006 (5th Cir. 1969). Protection is not lost if the employee is wrong on the merits of the charge, <u>Womack v. Munson</u>, 619 F.2d 1292, 1298 (8th Cir. 1980), <u>cert. denied</u>, 450 U.S. 979, 101 S. Ct. 1513, 67 L.Ed.2d 814 (1981), nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong. <u>Pettway</u>, 411 F.2d at 1007. Thus, once activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation.

<u>Id.</u> at 1312. As <u>Booker</u> indicates, discrimination complainants have fairly wide latitude in the manner in which they express

18

their complaints.  Thus, although Defendant contests Plaintiffs'
behavior in protesting against perceived discrimination, their
conduct, for purposes of engaging in protected activity, falls
within the parameters described by the Booker Court.  Whether
Plaintiffs lodged their discrimination complaints in good faith
is quintessentially a credibility question for the jury to
decide.  Obviously, Plaintiffs demeanor and the degree to which
there was evidence to support their discrimination claims bear on
their credibility and good faith, but those issues cannot be
decided on summary judgment.

        The Court additionally finds that there is evidence to
support a causal connection between Plaintiffs' complaints and
their terminations.  Although Defendant did not institute formal
proceedings against Plaintiffs until some seven or eight months
after their first formal discrimination complaints, as they note
in their brief, the ad hoc committee investigation, which
initially recommended their terminations, followed fairly closely
on the heels of a second complaint they lodged after they were
reprimanded for alleged misconduct during an August 2007 staff
meeting.  Additionally, Plaintiffs have adduced evidence that
Dean Janice Walker and Provost Roger Fortin both expressed
opinions that Plaintiffs acted uncollegially by filing
discrimination complaints against the University and other
faculty members.  Accordingly, the Court concludes that

Plaintiffs can establish a prima facie case of retaliation.

As indicated above with respect to the discrimination claims, Plaintiffs' alleged misconduct provides a legitimate, non-retaliatory reason for their discharge.

Finally, there is sufficient evidence of pretext to submit the case to a jury. As previously stated, it appears that the Faculty Hearing Committee's evaluation of Plaintiffs' conduct was highly subjective. Moreover, Professor Patnode, who did not assert any discrimination complaint against the University, was not recommended for termination proceedings even though his conduct arguably was indistinguishable from Plaintiffs' conduct. Additionally, Plaintiffs have adduced evidence showing that they were viewed as uncollegial in lodging discrimination complaints against the University and other faculty members.

Accordingly, for all of those reasons, Defendant's motion for summary judgment on Plaintiffs' retaliation claims is not well-taken and is **DENIED.**

By the same token, viewing the evidence in the light most favorable to Defendant, Plaintiffs' motion for summary judgment on their retaliation claims must be denied. Defendant has adduced deposition testimony from which, if believed, a reasonable juror could conclude that Plaintiffs were the major source of discord within the Communications Arts Department. Alternatively, a juror could conclude that Defendant reasonably

believed that Plaintiffs' conduct violated University standards based on the investigations and the testimony adduced for the Faculty Hearing Committee.  Their conduct was reviewed by two separate boards of inquiry and independently reviewed by the President and each time their behavior was found to be in violation of University policy.  This apparent consensus of opinion provides a substantial basis for a jury to conclude that Defendant acted in good faith, and not in any discriminatory or retaliatory manner, when it terminated Plaintiffs' employment. The Court recognizes that Plaintiffs challenge the fairness of those inquiries, but ultimately those challenges affect the credibility of Defendant's explanation for their terminations. Again, because credibility is an issue to be decided by a jury, summary judgment is not appropriate.

Accordingly, Plaintiffs' motion for summary judgment is not well-taken and is **DENIED.**

### C. Equal Pay Act

Plaintiffs claim that Defendant violated the Equal Pay Act ("EPA") by paying them less than other male professors in the Communications Arts Department for performing the same work.  The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1).  To establish a prima facie case of wage discrimination, the plaintiff must show that "an employer pays

different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Corning Glass Works v. Brennan, 417 U.S. 188, 195, (1974) (quoting 29 U.S.C. § 206(d)(1)). "Equal work" does not require that the jobs be identical, but only that there exist "substantial equality of skill, effort, responsibility and working conditions." Odomes v. Nucare, Inc., 653 F.2d 246, 250 (6th Cir. 1981). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." Id.

Once the plaintiff establishes a prima facie EPA violation, the burden shifts to the employer to prove that the wage differential is justified by one of the affirmative defenses set forth in § 206(d)(1): 1) a seniority system; 2) a merit system; 3) a system which measures earnings by quantity or quality of production; or 4) any other factor other than sex. Buntin v. Breathitt County Bd. of Educ., 134 F.3d 796, 799 (6th Cir 1998). The burden of proof is on the employer to establish that the wage differential is not based on gender. Id. Because the employer bears this burden of proof, the plaintiff is not required to adduce evidence that the employer's reason for the differential is pretextual. Id. at 799-800. The plaintiff, however, is required to provide evidence of pretext if a jury

22

could only find for the defendant on the issue of its affirmative defense.  Id. at 799 n.7.

Plaintiffs' principal comparator is Professor DeSilva, who was paid significantly more either Finch or Michels.  At the time of the filing of the briefs, DeSilva was being paid approximately $38,000 per year more than Finch and about $34,000 more per year than Michels.  Plaintiffs argue that this differential cannot be explained by the fact that DeSilva was the chair of the department, since Finch only received about a $1,500 to $3,000 additional annual stipend when she was the chair. Plaintiff Finch has also adduced evidence that her annual salary was only slightly higher than two other male professors, Thomas Wagner and Jeong-Nam Kim, despite the fact that they were the same rank (assistant professor) and her years of service to the University were substantially greater.

Although Defendant argues that Plaintiffs cannot establish a prima facie case of wage discrimination, it does not necessarily argue that the work performed by Plaintiffs and the work performed by Professor DeSilva was not equal.  Rather, Defendant argues that the pay differential between Plaintiffs and DeSilva was justified because he has held his post-graduate degrees (masters and Ph.d) longer than both Plaintiffs, had more teaching and professional experience than Michels, had more professional experience than Finch, Defendant had to recruit him

from another University, and, as chair of the department, had to shoulder more responsibilities than both Plaintiffs. Rather than negate Plaintiff's prima facie case, these reasons more appropriately relate to Defendant's affirmative defense of providing a reason other than sex for the wage differential. The Court notes, however, that the reasons advanced by Defendant for the differential are based on statements which the Court has already concluded cannot be considered because they are unsworn and not signed under the penalty of perjury. Therefore, Defendant cannot prevail on its affirmative defense on summary judgment.

In any event, the Court concludes that there are issues of fact to be tried on Plaintiffs' equal pay claims. While differences in experience and education legitimately justify differences in pay, an employer still may not use these factors as pretexts for discrimination. Balmer v. HCA, Inc., 423 F.3d 606, 612 (6th Cir. 2005) (stating that "[e]xperience is an acceptable factor other than sex if not used as a pretext for differentiation because of gender[.]") (quoting Hutchins v. International Bhd. of Teamsters, 177 F.3d 1076, 1081 (8th Cir. 1999)). Here, Plaintiffs have adduced evidence that traditionally Defendant paid no more than a $3,000 bonus or stipend to the Department chair to perform those extra duties. Accepting that fact as true for purposes of summary judgment,

Defendant paid DeSilva a $31,000 to $35,000 premium solely for his education and experience.  A reasonable juror could question whether DeSilva's educational and professional background was that much more valuable than Plaintiffs' background to justify that substantial differential in pay.

Accordingly, for the reasons stated, Defendant's motion for summary judgment on Plaintiffs' Equal Pay Act claims is not well-taken and is **DENIED.**

### D. Breach of Contract

Finally, Plaintiffs allege that Defendant breached the contract between the parties, as established by the Xavier University Handbook, by discharging them for less than "serious cause," by denying them academic freedom and shared governance of the University, by discriminating and retaliating against them, by subjecting them to discipline without notice and an opportunity to be heard, and by disciplining them on the basis of false allegations and suspending their rights as faculty members. In its answer, Xavier filed counterclaims that Plaintiffs breached the employment handbook's "Climate of Respect" provisions by making false accusations of discrimination and improper conduct against other faculty members and by discriminating against co-workers and job applicants based on national origin and race.  Defendant now moves for summary judgment both on Plaintiffs' claims for breach of contract and

its own counterclaims for breach of contract.

The parties agree that the Handbook is a contract between them. The Court's brief summary of the alleged breaches of the Handbook shows that the parties' contract claims are inextricably intertwined with Plaintiffs' discrimination and retaliation claims. As the Court's discussion of the discrimination and retaliation claims indicates, there are a myriad of factual issues surrounding the Plaintiffs' conduct, their good faith in lodging discrimination complaints with the University, and the legitimacy of Defendant's reasons for terminating Plaintiffs' employment.

According, Defendant's motion for summary judgment on Plaintiffs' breach of contract claims and its own counterclaims for breach of contract is not well-taken and is **DENIED.**

### E. Failure to Mitigate Damages

Defendant argues that summary judgment on Plaintiffs' claims for front pay is appropriate because Plaintiffs have failed to mitigate their damages. In response, Plaintiffs argue, and the Court agrees, that Defendant's contention that Plaintiffs failed to mitigate their damages is premature since Plaintiffs were still employed by the University at the time of the filing of the motion for summary judgment, albeit on a terminal contract. In any event, failure to mitigate is an affirmative defense of the employer, Thurman v. Yellow Freight Sys., Inc.,

90 F.3d 1160, 1169 (6th Cir. 1996), with the ultimate question being whether the plaintiff failed to look for and accept employment that was substantially equivalent to the job from which she was discriminatorily fired.  <u>Ford v. Nicks</u>, 866 F.2d 865, 873 (6th Cir. 1989).  At this juncture of the proceedings, there is no evidence in the record that substantially equivalent work was available to Plaintiffs.  Accordingly, Defendant's motion for summary judgment on failure to mitigate is not well-taken and is **DENIED.**[4]

### IV. <u>Motion to Strike</u>

Defendant moves to strike several exhibits filed with Plaintiffs' motion for summary judgment.  Defendant argues that one exhibit was filed in violation of the protective order and that other exhibits are only excerpts from transcripts which violate the rule of completeness.  The Court, however, has denied Plaintiffs' motion for summary judgment.  Therefore, the Court finds that Defendant's motion to strike is **MOOT.**

---

[4]  Defendant also argues that Plaintiffs' right to recover front pay should be cut off under the after-acquired evidence doctrine because they surreptitiously tape-recorded meetings and then lied when asked about it by University administrators. Defendant argues that Plaintiffs would have been terminated because of these actions alone had it been aware this was occurring.  This is also an affirmative defense of the employer. <u>McKennon v. Nashville Banner Pub. Co.</u>, 513 U.S. 352, 362-63 (1995).  However, Defendant's claim that Plaintiffs would have been terminated based on after-acquired evidence of wrongdoing is again based on the unsworn statements it has filed with the Court. Doc. No. 117, at 104.  Accordingly, Defendant is not entitled to summary judgment on this issue.

V. <u>Motion to Supplement Memorandum In
Opposition to Defendant's Motion For Summary Judgment</u>

Plaintiffs filed a motion to supplement their
memorandum in opposition to Defendant's motion for summary
judgment (Doc. No. 140) because during the process of editing
their final brief, they inadvertently omitted to include two
relatively brief sections of their argument.  Defendant did not
object to Plaintiffs' motion to supplement, so it is well-taken
and is **GRANTED.**

VI. <u>Motion to Strike Notices of Supplemental Authority</u>

After principal briefing on the cross-motions for
summary judgment was completed, Plaintiffs filed three notices of
supplemental authority (Doc. Nos. 148-150) which Defendant has
moved to strike (Doc. No. 151).  The Court has not relied on any
of the supplemental authority tendered by Plaintiffs, so the
motion to strike is **MOOT.**


**IT IS SO ORDERED**


Date_February 10, 2010_        _____s/Sandra S. Beckwith_____
                               Sandra S. Beckwith
                               Senior United States District Judge